UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUELO F.,[1]<br>    Plaintiff<br>v.<br>ANDREW SAUL, Commissioner of Social Security,[2]<br>    Defendant. | Case No. EDCV 18-cv-02648-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Consuelo F. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs [Dkt. 18 ("Pl. Br."), Dkt. 19 ("Def. Br.")] addressing disputed issues in the case. Plaintiff also filed a Statement of No Reply. [Dkt. 20.] The matter is now ready for

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff originally filed an application for SSI on June 6, 2012 [AR 97]. An Administrative Law Judge ("ALJ") found Plaintiff not disabled in a written decision dated September 9, 2014. [AR 97-111.] Plaintiff did not appeal that decision, but instead filed a new application for SSI on November 19, 2014, this time alleging that she became disabled on September 10, 2014, the day after the original decision was filed. After the Commissioner denied her second application initially and upon reconsideration, Plaintiff had two hearings before a second ALJ. In a decision dated November 15, 2017, the ALJ found Plaintiff not disabled. [AR 145-49, 154-59, 26-36, 37-56, 12-21.] The Appeals Council denied review. The present action followed.

In the November 2017 decision under review, the ALJ first set forth in some detail the decision of the prior ALJ finding Plaintiff to be not disabled on September 9, 2014. The Court will address relevant portions of this earlier decision where appropriate below.

The ALJ then applied the five-step sequential evaluation process for assessing disability based on the later-filed application. [AR 15-23.] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 19, 2014 (the application date). [AR 15.] At step two, the ALJ determined that Plaintiff suffered from the severe impairments of lumbar spine degenerative disc disease and strain, obesity, and diabetes. [AR 15, citing 20 C.F.R. 416.920(c).] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations. [AR 17.] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, at

step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b)). [AR 17.] At step five, the ALJ determined that Plaintiff was not able to perform any of her past relevant work, which included work as a cooks helper (Dictionary of Occupational Titles No. 317.687-010), an unskilled occupation (SVP-2) requiring medium work both as performed by the claimant and as generally performed. [AR 20.] The ALJ then determined that Plaintiff was a person closely approaching advanced age on the date the application was filed (20 C.F.R. 416.963), has a marginal education, and is able to communicate in English (20 C.F.R. 416.964). [AR 20.]

Based on the above assessment, the ALJ determined that transferability of skills was not an issue in this case because Plaintiff's past relevant work was unskilled. [AR 21.] And, considering Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [AR 21.] Based on an RFC for the full range of light work, the ALJ determined that a finding of "not disabled" was directed by Medical-Vocational Rule 202.10. [AR 21.]

Plaintiff claims the ALJ committed legal error in two regards. First, Plaintiff claims that the ALJ erred in finding that she is able to communicate in English, and more specifically, that she is "literate." [Pl. Br. at 3, 5-10.] Second, Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting Plaintiff's statements and testimony regarding her level of pain and limitations. [Pl. Br. at 3, 10-14.] Plaintiff requests reversal and remand for further administrative proceedings. [Pl. Br. at 14.] Defendant asserts that the ALJ's decision should be affirmed. [Def. Br. at 8.]

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### 1. The Principles Of *Res Judicata* Apply

Plaintiff failed to raise, let alone discuss in any detail, the prior ALJ's finding in 2014 (based on her 2012 application for SIS) that she was not disabled. The second ALJ's opinion that is at issue here, and the Commissioner's Opposition to the Plaintiff's Memorandum in Support of her Complaint, set forth the law and conclude that the principles of *res judicata* apply here. Notably, rather than

addressing the Commissioner's res judicata argument in reply, Plaintiff chose to file a Statement of No Reply [Dkt. 20], essentially conceding the point.

As the ALJ set forth in the present decision under review:

> In the prior decision, the claimant was assessed with severe impairments of degenerative disc disease with lumbar radiculopathy; degenerative disc disease of the cervical spine; left shoulder impingement; and asthma, in addition to non-severe impairments of diabetes, hypertension, obesity, and an adjustment disorder with mixed anxiety and depressed mood. With these impairments, she was capable of performing a range of light work, and to be able to make a vocational adjustment to other work existing in significant numbers. As a result, with respect to the unadjudicated period under the current application for supplemental security income, there is a rebuttable presumption of continuing nondisability under the *Chavez* Acquiescence Ruling (Social Security Acquiescence Ruling (AR) 97-4(9)). The claimant may rebut this presumption by showing a changed circumstance affecting the issue of disability with respect to the unadjudicated period.

[AR 12-13.]

The ALJ further noted that there was no change in age category between the first ruling and his present findings because at the time of the prior decision, Plaintiff had already transitioned in age category to being an individual closely approaching advanced age. [AR 13.] Notably, the first ALJ's opinion in 2014, which is also part of the record here, specifically found – as did the second ALJ – that Plaintiff "has a limited education and is able to communicate in English." [AR 109.] Plaintiff never challenged the first ALJ's findings, instead choosing to file a second application for SIS.

Plaintiff makes no attempt in her brief to rebut the presumption of non-disability. She does not point to changed circumstances or evidence of worsening conditions or new limitations. And as previously noted, she failed to address this issue at all, despite having the opportunity to reply when the Commissioner argued for application of *res judicata* in his brief. Thus, the principles of *res judicata* apply, and the ALJ's decision must be affirmed. For completeness, however, the Court will nevertheless address Plaintiff's specific arguments for reversal, neither of which warrants a different outcome, below.

## 2. The ALJ's Decision Finding Plaintiff Is Literate And Sufficiently Able To Communicate In English Is Supported By Substantial Evidence

Plaintiff first challenges the ALJ's finding that she can communicate in English, which, because she is a person approaching advanced age, is a requirement in this case for a finding that she is not disabled. Pl. Brf. at 3, 5-10. As just noted, the first, unchallenged determination of non-disability found Plaintiff was capable of communicating in English so that, despite her advancing age, she was able to transition to another unskilled job (as opposed to her past relevant work). Plaintiff has not presented evidence that her English has deteriorated since the first decision. Rather, she argues that she has never been able to speak or write English, even to the minimal level required here. Plaintiff testified through a translator, and points to the fact that any forms she was given to review or sign contained in her medical records are in Spanish.[3] The ALJ nevertheless found, for reasons set forth in her opinion, that Plaintiff was literate.

In addition to making her *res judicata* determination, the ALJ based her finding that Plaintiff could communicate in English on the fact that Plaintiff testified that she took and passed the citizenship test in English; took her driver's license test in English; and took English classes for a year. [AR 20.] Plaintiff argues that despite these facts, the ALJ was required to administer some form of test or probe further before deciding that she was "literate" in English. Plaintiff's brief argues that it is possible to pass standardized tests by memorization, and speculates (providing no evidence) that this is what Plaintiff must have done.

Plaintiff premises the contention that she is illiterate and the ALJ was required to do further testing primarily upon a provision of HALLEX, a Social Security Administrations Hearings, Appeals and Litigation Law Manual, that

---

[3] At the hearing before the first ALJ, Plaintiff responded to some questioning in English regarding her English-speaking ability, and testified that she could speak and read a little English.

defines illiteracy as the inability to read or write in the English language (Doc. 24, p. 19, *citing* HALLEX I-5-3-12(III)(A)). However, HALLEX is an internal manual that provides policy and procedural guidelines; it was not promulgated in accordance with the procedural requirements for the creation of binding regulations and, therefore, has no legal force. *Moore v. Apfel,* 216 F.3d 864, 868–69 (9th Cir. 2000); *Lockwood v. Comm'r*, 616 F.3d 1068, 1072 (9th Cir. 2010); *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA."). Furthermore, Plaintiff certainly has not identified any legal authority that HALLEX trumps the pertinent federal regulations, 20 C.F.R. 404.1564(b)(1), 416.964(b)(1), which define literacy more broadly than HALLEX.

Moreover, the ALJ could find, even under the HALLEX standard, that Plaintiff was literate because Plaintiff testified that she took her citizenship and driver's tests in English, took English classes for a year [AR 20, 42-43], and Plaintiff's work history indicated an ability to carry out a job that, according to the DOT, required some modicum of ability to communicate in English. [AR 52, DOT 317.687.010.]

Finally, with regard to unskilled work, literacy or the ability to communicate in English does not have great significance compared to other requirements. Specifically, 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(g) ("[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than data or people) and in these work functions at the unskilled level, literacy or the ability to communicate in English has the least significance.")

For all these reasons, the Court rejects Plaintiff's contention of error and that reversal is required based on the ALJ's finding that she is literate.

//
//
//

7

### 3. The ALJ Gave Legally Sufficient Reasons For Finding Plaintiff's Testimony Regarding The Severity Of Her Impairments Less Than Credible

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Pl. Br. at 10-14.] Here, even assuming that Plaintiff had pointed the Court to some evidence other than her testimony that her condition had materially changed since the last determination that she was not disabled (which she has not), the ALJ gave at least one sufficient reason for finding her statements regarding the extent of her impairments less than credible.

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of her symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and explain what evidence undermines that testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . .' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting Social Security Ruling 16-3p).

At the hearing, Plaintiff testified to severe limitations, such as that she can only sit for short periods of time and must walk with a cane that she had been using for about two years at the time of the hearing. She further testified that even with the cane, she can only walk for up to 75 feet or about 10 minutes. She stated she

can cook basics meals, but must take breaks when she does so. She also testified to other extreme limitations that in her view render her "simply incapable of persisting at those activities as would be required by any full time competitive employment." Pl. Br. at 12 (citing AR 285-287, 304-209). Plaintiff alleges these limitations flow from a combination of impairments, including diabetes, musculoskeletal complaints, and high blood pressure.

Based on its review, the Court finds that, for the following reasons, the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. [AR 16-19.] *See Trevizo*, 871 F.3d at 678; *Smolen*, 80 F.3d at 1284.

The ALJ pointed to specific evidence in the record that contradicts these claims. For example, her allegations that she is required to use a cane and cannot ambulate for more than very short distances were found inconsistent with "the lack of any neurological deficits or loss of motor strength" in tests, mild findings on x-rays of her joints, and "full and pain free range of motion to the hips, knees, ankles and feet," and, further, that it was noted in her medical records that she walked with a normal gait. [AR 19-20, 15, 18, 420, 715, 413-15, 210). *See, e.g., Para v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (ALJ's identification of lab tests that contradicted claimant's complaint of bursitis was proper basis to discount claimant's statements).

The ALJ also discussed Plaintiff's history of conservative treatment as a specific and legitimate reason to discount her allegations of disabling symptoms. [AR 19.] *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir 1995) (conservative treatment indicated a lower level of both pain and functional limitations than claimed by plaintiff).

Finally, the ALJ further pointed out that Plaintiff herself had reported that her joint pains and stiffness resolved within a few minutes of when she got out of bed. [AR 19, 707.] The inconsistency in Plaintiff's statements was a specific, clear and convincing reason on which the ALJ could properly rely in rejecting Plaintiff's

9

subjective symptom testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony); *Smolen*, 80 F.3d at 1284 (ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the claimant's testimony).

Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of her symptoms.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: October 23, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE